**STEPTOE & JOHNSON LLP**
Robyn C. Crowther (Bar No. 193840)
rcrowther@steptoe.com
633 West Fifth Street, Suite 1900
Los Angeles, California 90071-3500
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

**STEPTOE & JOHNSON LLP**
Michael Allan (*admitted pro hac vice*)
mallan@steptoe.com
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-6749

Attorneys for Defendants
FIVE BELOW, INC. and ORLY SHOE CORP.

[Additional Counsel Listed on Next Page]

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION, a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>FIVE BELOW, INC., a Pennsylvania Corporation; ORLY SHOE CORP., a New York Corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 2:20-CV-11349-CAS-MRW<br><br>**DEFENDANTS FIVE BELOW, INC. AND ORLY SHOE CORP.'S MOTION IN *LIMINE* NO. 2 TO EXCLUDE PLAINTIFF'S EXPERT MATTHEW G. EZELL'S SURVEY AND RELATED OPINION TESTIMONY ON SECONDARY MEANING**<br><br>Date:        October 31, 2022<br>Time:       11:00 a.m. PST<br>Courtroom: 8D<br>The Honorable Christina A. Snyder |

1  **STEPTOE & JOHNSON LLP**
2  Candice J. Kwark (Bar No. 339220)
   *ckwark@steptoe.com*
3  227 West Monroe Street, Suite 4700
4  Chicago, Illinois 60606
   Telephone: (312) 577-1263
5  Facsimile: (312) 577-1370
6
7  Attorneys for Defendants
   FIVE BELOW, INC. and ORLY SHOE CORP.
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION AND MOTION *IN LIMINE* NO. 2 TO EXCLUDE EXPERT MATTHEW G. EZELL'S SURVEY AND RELATED OPINION TESTIMONY ON SECONDARY MEANING**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on October 31, 2022 at 11:00 a.m. in Courtroom 8D, of the above-entitled Court of the United States District Court for the Central District of California, located at 350 W. First Street, Los Angeles, California 90012, Defendants Five Below, Inc. and Orly Shoe Corp. will and hereby do move in *limine* to preclude Plaintiff Deckers Outdoor Corporation from proffering or eliciting testimony from its expert Matthew G. Ezell on his survey and related opinion testimony on secondary meaning.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on September 29, 2022.

DATED: October 3, 2022          STEPTOE & JOHNSON LLP

                                By:  */s/ Robyn C. Crowther*
                                     Robyn C. Crowther
                                     Michael Allan
                                     Candice J. Kwark
                                Attorneys for Defendants FIVE BELOW, INC. and ORLY SHOE CORP.

## I. INTRODUCTION

Plaintiff's proffered expert, Matthew G. Ezell, attempted to measure trade dress secondary meaning by a survey. Mr. Ezell's survey (the "Ezell Survey"), however, was designed with substantial methodological deficiencies that render the survey results unreliable.[1] Specifically, the Ezell Survey 1) was not designed to elicit from the respondents whether there was an appreciable association between the asserted trade dress and a *single* source; 2) primed and biased the respondents by repeatedly referring to Deckers' $100.00 outdoor shoe product as a "slipper"; 3) selected an improper universe; and 4) employed a defective control. The totality of these deficiencies renders the survey untrustworthy. Mr. Ezell should be precluded from testifying.

## II. LEGAL STANDARD

A court may admit expert evidence only if it is both relevant and reliable.[2] Further, Federal Rule of Evidence 403 requires the exclusion of even relevant evidence "if its probative value is substantially outweighed by a danger" of "unfair prejudice, confusion of the issues, or misleading the jury[.]" Fed. R. Evid. 403.

## III. ARGUMENT

### A. The Ezell Survey Is Fatally Flawed Because It Fails to Test for Identification With a *Single* Source

The Ezell Survey is neither reliable nor relevant. The key to a secondary meaning survey is to identify whether respondents associate the trade dress with a *single* source. Specifically, valid surveys establish whether (a) respondents

---

[1] Mr. Ezell further opines on the unreliable survey in his Expert Report ("Ezell Report"). The Ezell Report has been filed under Declaration of Matthew G. Ezell ("Ezell Decl.") [Dkt. 57-4] ¶ 2, Ex. 1, and is reproduced here as Exhibit A.

[2] Fed. R. Evid. 702; *Ill. Tool Works, Inc. v. MOC Prods. Co., Inc.*, No. 09CV1887 JLS (MDD), 2012 WL 3561984, at *5 (S.D. Cal. Aug. 17, 2012); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).

1
DEFENDANTS' MOTION IN LIMINE NO. 2

associate the mark in question with <u>a single source</u> or <u>multiple sources</u> (or <u>none at all</u>) and (b) <u>if they associate it with a single source</u>, which one.  Ex. B, *Trademark and Deceptive Advertising Surveys: Law, Science, and Design* 3 (S. Diamond & J. Swann eds., 2012) at 95; Ex. C, Deposition Transcript of Matthew G. Ezell taken August 5, 2022 ("Ezell Depo.") at 30:13–24.

Here, the Ezell Survey fails to test for secondary meaning because it asks the critical "single- versus multiple-source question" (Q3) *only if* the respondent answers Q1 that the respondent <u>does not know</u> or <u>has no opinion</u> whether the overall appearance of Deckers' product is associated with any particular brand or brands or answers Q2 that the respondent does not know what particular brand or brands Deckers' product is associated with.  Ex. C at 88:25–89:13.  The Ezell Survey should have led with Q3, asking *all* respondents whether they associate the asserted trade dress with a single source or multiple sources, and if only a *single* source, which one.  Instead, only a handful of respondents were asked that important question.  Respondents were asked the following:[3]

**Q1.** Do you associate the overall appearance of this slipper with any particular brand or brands?
    <u>Yes</u> → Go to Q2. (110)
    <u>No</u> → STOP. (83)
    <u>Don't know or no opinion</u> → Go to Q3. (7)

**Q2.** What brand or brands?
    <u>[Text field]</u> → STOP. (103)
    <u>Don't know</u> → STOP. (7)

**Q3.** Do you associate the overall appearance of this slipper with one brand or more than one brand?
    <u>One brand</u> → STOP. (1)
    <u>More than one brand</u> → STOP. (6)
    <u>Don't know or no opinion</u> → STOP. (0)

This question design is flawed for two reasons.  *First*, **Q2** does not test

---

[3] Ex. A at 10, 20–38, 55–57.  The arrow represents the next step in the survey.  The number in the parentheses represents the number of respondents for each selection.

secondary meaning.  **Q2** (What brand or brands?) provides a *text field*, and thus is illogical because a consumer could very well associate a design with multiple brands, but be able to name, or choose to name only one in the text field.  Ezell Depo. 86:19–87:1.  **Q2** did not instruct respondents to list *all* brands respondents associate the trade dress with.  Mr. Ezell erroneously presumes the association of the trade dress with a *single* source.  However, whether or not respondents wrote one brand (or Ugg) in the text field is not probative because it is impossible to ascertain that the respondents who wrote one brand in the text field actually associate the trade dress with a *single* source.  *Second*, only 7 respondents (3.5% of respondents[4]) were provided the key secondary meaning question **Q3**, which provides three choices of <u>One brand</u>, <u>More than one brand</u>, or <u>Don't know or no opinion</u>.  **Q3** is the only question that ascertains whether respondents associate the trade dress with a *single*, not multiple, source.

      The survey design is glaringly contrary to the basic principles necessary to ensure the integrity of the secondary meaning survey results.  Accordingly, Defendants challenge not only its reliability, but also its "fitness" under *Daubert*.[5]

### B.   The Ezell Survey Is Biased

      Priming refers to asking questions that will influence the way respondents will answer questions.  Here, Deckers' sell a number of slipper products.  *See* Declaration of Robyn Crowther, Ex. 1 [Dkt. 71-1] at 6 (slippers being second and third highest category of product currently owned and ever owned after UGG

---

[4] 7 respondents out of 200 respondents.

[5] *BDO Remit (USA), Inc. v. Stichting BDO*, No. CV 11–04054, 2012 WL 12895658, at *11 (C.D. Cal. Sept. 19, 2012) (reasoning that if the survey failed to test the issue before the jury, the court would be well within its discretion to exclude as irrelevant); *Vail Assocs., Inc. v. Ven-Tel-Co., Ltd.*, 516 F.3d 853, 864 n.8 (10th Cir. 2008) (holding that the district court did not abuse its discretion in excluding survey evidence that suffered from systematic design flaws).

1  Classic Boots).

2  Tellingly, Deckers' describes the asserted trade dress not as a "slipper" alone, but also as a slide and a sandal. See Amended Complaint [Dkt. 31] at ¶ 23–24 (alleged trade dress is a slipper and sandal combined); Ex. D (DOC001248) (Ugg.com product page of Fluff Yeah Slide); Ezell Depo. 40:22–41:8; 42:19–43:6; 46:20–47:6. Recognizing that the trade dress is a slipper, a slide, and a sandal, and to minimize the bias in his secondary meaning survey, Defendants' Expert Dr. David Neal used the term "slippers/sandals/slides" in screening questions and the term "footwear" in the questionnaire. See Ex. E, Declaration of Dr. David Neal [Dkt. 86], Ex. A (the "Neal Report") at 13–22.[6] By contrast, the Ezell Survey is replete with the term "slipper" and even identifies the test image as a "slipper" and only a "slipper."[7] Priming does not comport with sound methodology and is blatantly improper, and the Ezell Survey should be excluded for this reason alone.

### C.  The Ezell Survey Relies On an Improper Universe

The Ezell Survey used an improper universe. McCarthy at § 32:159. The Ezell Survey focused on females who have purchased or are likely to purchase a pair of **slippers** costing approximately **$50 or more** for themselves. Ex. A at 7, 48–51. However, the Fluff Yeah Slide is sold predominantly in stores and luxury retailers like Nordstorm for $100.00. Declaration of Lisa Bereda ("Bereda Decl.") [Dkt. 57-1], ¶ 17; Ex. D (DOC001248) (Ugg.com product page of Fluff Yeah Slide listed for $100.00). In fact, Mr. Ezell could not name a single store, online or otherwise, that listed the Fluff Yeah Slide for $50.00. Ezell Depo. at 64:3–8, 65:15–18. Moreover, the Ezell Survey categorically excludes those who have purchased or are likely to purchase a pair of slides or sandals. No matter how

---

[6] The Neal Report has been filed under Declaration of Dr. David Neal ("Neal Decl.") [Dkt. 86] ¶ 2, Ex. A, and is reproduced here as Exhibit F.

[7] See Ex. A at 7, 48–51, 54–57. The Ezell Survey is completely devoid of the terms "slide" and "sandal."

4
DEFENDANTS' MOTION IN LIMINE NO. 2

accurate or proper the question posed, placing the survey before an inappropriate subject renders the data worthless, and thus, the Ezell Survey should be excluded. *See Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 488 (5th Cir. 2004); *Universal City Studios, Inc. v. Nintendo Co Ltd.*, 746 F.2d 112, 118 (2d Cir. 1984).

### D. The Ezell Survey Used a Defective Control

The Ezell Survey used control stimuli that artificially increased secondary meaning results. Ezell's test and control cell images share virtually no features besides being red. According to Deckers, the Fluff Yeah Slide is a "statement shoe." Complaint [Dkt. 31] at ¶ 23–24. By contrast, the control cell image is a non-descript indoor "hotel style" slipper. Even Mr. Ezell so concedes. Ezell Depo. at 112:15–20. The two cell images are below. *See* Table 1; Ex. A at 18, 31.

| Table 1. Test and Control Cell Images from the Ezell Survey ||
|---|---|
| **Test Cell Image** | **Control Cell Image** |
| (red fluffy slide sandal) | (red hotel-style slipper) |

The control cell image is so grossly inappropriate that the Ezell Survey cannot possibly test exactly the influence of a stimulus. McCarthy at § 32:187; *see Shell Trademark Mgmt. B.V. v. Warren Unilube, Inc.*, 765 F. Supp. 2d 884, 894 (S.D. Tex. 2011) (expressing that the court was "troubled that the control chosen seems to share virtually no features with the ROTELLA bottle besides the basic fact that they are motor-oil bottles."); *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 541 F. Supp. 3d 1110, 1136 (S.D. Cal. 2021). The Ezell Survey should be disregarded.

### IV. CONCLUSION

The totality of these deficiencies identified above renders the survey untrustworthy, and Defendants' Motion in *Limine* No. 2 should be granted.

| | | |
|---|---|---|
| 1 | DATED: October 3, 2022 | STEPTOE & JOHNSON LLP |
| 2 | | |
| 3 | | By: */s/ Robyn C. Crowther* |
| 4 | |     Robyn C. Crowther |
| 5 | |     Michael Allan |
|   | |     Candice J. Kwark |
| 6 | | Attorneys for Defendants FIVE BELOW, INC. and ORLY SHOE CORP |